IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEITH W. HARRELL,

                Petitioner,

vs.

CRAIG KOENIG, Acting Warden,
Correctional Training Facility,[1]

                Respondent.

No. 2:15-cv-00052-JKS

MEMORANDUM DECISION

Keith W. Harrell, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas

Corpus with this Court pursuant to 28 U.S.C. § 2254. Harrell is in the custody of the California

Department of Corrections and Rehabilitation and incarcerated at the Correctional Training

Facility in Soledad, California. Respondent has answered, and Harrell has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On March 7, 2011, Harrell was charged with one count of second-degree robbery. The

information further alleged as enhancements that Harrell personally used a firearm during the

commission of the crime, had suffered four prior strike convictions, had suffered four prior

serious felonies, and had served three prior prison terms. Harrell denied the charge and the

allegations and proceeded to a jury trial on March 10, 2011. On direct appeal of his conviction,

the California Court of Appeal summarized the following evidence presented at trial:

> ### *Prosecution Case–in–Chief*
> On a Sunday in June 2010, [Harrell] and Martin, his friend and roommate,
> decided to spend the day going to garage sales and purchasing items using counterfeit
> bills. After visiting two garage sales, [Harrell] pulled out a gun from under the driver's

---

[1]      Craig Koenig, Acting Warden, Correctional Training Facility, is substituted for
Eric Arnold, former Acting Warden, California State Prison, Solano. FED. R. CIV. P. 25(d).

seat of his car and told Martin, "We're going to rob the next place." Martin believed [Harrell] was serious and not joking because he seemed to be agitated, and he was acting in an aggressive manner. Martin agreed with [Harrell's] plan.

As they drove, [Harrell] and Martin saw signs for another garage sale. They followed the signs and ended up at the home of Quang Vo. Martin got out of the car, walked up to Vo, and said, "Give me all your money." At first, Vo thought Martin was joking. However, Martin looked back over her shoulder toward [Harrell], who was still sitting in the car, and told Vo that [Harrell] had a gun. Vo looked over at the car and saw [Harrell] holding a gun. At that point, Vo feared for his life, so he pulled all of the money out of his pockets and gave it to Martin. After getting the money, Martin hurried back to the car and [Harrell] drove away.

### *Defense*
The defense rested without presenting evidence or testimony.

*People v. Harrell*, No. C068170, 2013 WL 647391, at *1-2 (Cal. Ct. App. Feb. 22, 2013).

At the conclusion of trial, the jury found Harrell guilty of robbery, but could not reach a verdict on the related gun use enhancement allegation. On the same day, a jury trial was held regarding the prior conviction enhancement allegations,[2] and the jury found all of the remaining enhancement allegations to be true. The trial court subsequently sentenced Harrell to an aggregate term of 45 years to life imprisonment.

Through counsel, Harrell appealed his conviction, arguing that: 1) the prosecution committed prejudicial misconduct by vouching for one of its witnesses; 2) the trial court erred in sentencing by failing to perform an intracase proportionality analysis; and 3) the abstract of judgment did not reflect the oral pronouncement of judgment. Harrell also filed a counseled supplemental brief that argued that the trial court erred in staying, rather than striking, the prior prison term enhancements. The Court of Appeal modified the judgment to impose and stay execution of the one-year prior prison term enhancements but otherwise affirmed the judgment

---

[2] One of the prior prison term enhancement allegations was dismissed prior to trial on the remaining prior conviction enhancement allegations.

against Harrell in its entirety in a reasoned, unpublished opinion issued on February 22, 2013. *Harrell*, 2013 WL 647391, at *5. Counsel for Harrell petitioned in the California Supreme Court for review of his sentencing claim, arguing that, because the State did not respond to the supplemental brief raising that claim, the State had conceded it. The Supreme Court denied review without comment on May 15, 2013.

Harrell, proceeding *pro se*, then filed in the Court of Appeal a "Writ of Error under the English Common Law." In that filing, Harrell contended that "[t]he court lacked jurisdiction when it entered a judgment based on an incomplete and contrary to law verdict." According to Harrell, the jury improperly rendered true findings on the prior conviction allegations "without a finding [that Harrell] waived his Constitutional rights in each of those counts." The Court of Appeal summarily denied the petition on March 6, 2014. Harrell submitted the same *pro se* filing to the California Supreme Court, which was likewise denied without comment on April 30, 2014.

Harrell then filed in the Superior Court a *pro se* motion seeking "recall and resentencing" under the Three Strikes Reform Act of 2012. Harrell alleged that the court should strike his prior convictions in light of his satisfactory disciplinary record and record of rehabilitation. The Superior Court summarily denied the petition on July 7, 2014.

Again proceeding *pro se*, Harrell filed a habeas petition in the California Supreme Court. In that petition, Harrell argued that: 1) he was denied due process and his right to counsel when the trial court refused self-representation under *Faretta*[3]; 2) trial counsel refused to give Harrell

---

[3]       *Faretta v. California*, 422 U.S. 806 (1975) (holding that a defendant in a state criminal trial has the constitutional right to refuse appointed counsel and represent himself when he does so voluntarily and intelligently).

legal materials from his case; and 3) trial and appellate counsel were ineffective in a variety of ways. The Supreme Court denied the petition without comment on October 29, 2014.

Harrell then timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on December 19, 2014. *See* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Harrell argues: 1) he was denied his right to counsel when the trial court refused to allow self-representation and a continuation to prepare his defense; 2) his right to collateral review was denied because his trial counsel did not give him the materials from his case; 3) trial and appellate counsel rendered ineffective assistance in a variety of ways; and 4) the prosecutor committed misconduct when he vouched for the veracity of a prosecution witness. Harrell further requests the appointment of counsel and an evidentiary hearing as to all his claims.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner

rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.  <u>*Denial of Self-Representation*</u> (Ground 1)

Harrell first argues that his rights to counsel and due process were violated when the trial court refused to allow him to represent himself and would not grant a continuance to allow him to prepare a defense.

Under the Sixth Amendment, criminal defendants have a right to be represented by an attorney. U.S. CONST. amend. VI. The right to counsel has been interpreted to encompass "an independent constitutional right" of the accused to represent himself at trial, and thus waive the right to counsel. *Faretta*, 422 U.S. at 806. This right, however, is neither automatic nor without qualification. "While the right to counsel attaches unless affirmatively waived, the right to self-representation does not attach until exerted." *Sandoval v. Calderon*, 241 F.3d 765, 774 (9th Cir. 2001). To properly invoke his rights under *Faretta*, a defendant's request must be timely, not for purposes of delay, unequivocal, and knowing and intelligent. *United States v. Maness*, 566 F.3d 894, 896 (9th Cir. 2009) (per curiam); *Sandoval*, 241 F.3d at 774 ("A defendant may not invoke the *Faretta* right if the *Faretta* demand is untimely, equivocal, made for the purpose of delay, or is not knowingly and intelligently made."). The right to self-representation has thus been called somewhat "disfavored" when compared to the important benefits expressly offered by the Sixth Amendment right to counsel, and "there is no rule that a defendant who has once expressed a desire for self-representation must be cautioned or addressed personally before receiving the assistance of counsel." *Id*.

Here, the record indicates that Harrell first moved to represent himself five days before his scheduled trial date, which the court had set on the last permissible date within the 60-day speedy trial deadline under California Penal Code § 1382.[4]  Harrell moved for a continuance, and indicated for the first time that he would waive the § 1382 requirement, but the judge denied the request.  The court stated, "I do find that this request is not timely and that there has not been reasonable cause shown by Mr. Harrell for the late request."  The court added, "Also, I do find that there have been other requests to substitute counsel[5] and, also, it would cause a disruption or delay in the proceedings.  Witnesses have already been subpoenaed and are coming in next week."

The Ninth Circuit has noted that *Faretta* itself provides uncertain guidance about "the precise contours" of the "timeliness" element in *Faretta*, and when a defendant's request to represent himself may permissibly found to be "untimely."  *See Marshall v. Taylor*, 395 F.3d 1058, 1061 (9th Cir. 2005) (discussing *Faretta*).  The Ninth Circuit has therefore stated that "[b]ecause the Supreme Court has not clearly established when a *Faretta* request is untimely, other courts are free to do so as long as their standards comport with the Supreme Court's holding [in *Faretta*] that a request [made] 'weeks before trial' is timely."  *See id.*; *see also*

---

[4]     That section provides in part that a court must dismiss an action, absent good cause for the day, "[i]n a felony case, when a defendant is not brought to trial within 60 days of the defendant's indictment or information."  CAL. PENAL CODE § 1382(a)(2).

[5]     The record indicates that, in the ninth months preceding trial, Harrell had made three motions to replace counsel pursuant to *People v. Marsden*, 465 P.2d 44 (Cal. 1970) (holding it was error for the trial court to deny a defendant's motion to relieve his court-appointed attorney without holding a hearing to allow the defendant to explain its grounds).  It was not until the final *Marsden* hearing shortly before trial that Harrell first expressed his desire to represent himself.  Harrell does not contend that the *Marsden* motions were improperly decided or request that the record and review be extended to cover those hearings.

*Stenson v. Lambert*, 504 F.3d 873, 884-85 (9th Cir. 2007) (finding that state courts' denial of *Faretta* request as untimely was not objectively unreasonable under AEDPA because "[t]he Supreme Court has never held that *Faretta*'s 'weeks before trial' standard requires courts to grant requests for self-representation coming on the eve of trial").

Under this guidance, and in light of the facts of this case, the Court cannot find that the California courts' denial of this claim was unreasonable or contrary to federal authority. It is without question that Harrell's request to represent himself was "untimely" under *Faretta*'s "weeks-before" timeliness guideline, and the state courts' untimeliness finding does not clearly contradict *Faretta* or its progeny. *See, e.g., Stenson*, 504 F.3d at 884-85; *Marshall*, 395 F.3d at 1061.

Moreover, Harrell's contention that the court should have granted a continuance in the case to accommodate his self-representation request is unavailing. Harrell argues that he had a statutory right to a continuance under state law. But even if that were true, because there is no federally-protected right, any deprivation of a state-law guarantee is not a basis for federal habeas relief. *Accord Laboa v. Calderon*, 224 F.3d 972, 979 (9th Cir. 2000) ("state statutory rule[s] . . . are not required by the Constitution or federal law."). "A State violates a criminal defendant's due process right to fundamental fairness if it arbitrarily deprives the defendant of a state law entitlement." *Id.* at 979 (citing *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980)).

"[O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Morris*, 461 U.S. at 11-12 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)). There are no "mechanical tests" for determining when a scheduling decision was so arbitrary that it violated due process. *Ungar*,

376 U.S. at 589; *United States v. Kloehn*, 620 F.3d 1122, 1127 (9th Cir. 2010). Instead, a federal habeas court must examine the circumstances in which the decision was made and the facts known to the trial court at the time. *Ungar*, 376 U.S. at 589. In particular, the court must consider the petitioner's diligence in preparing for trial, the utility of the continuance, the probability that the objective of the continuance would have been achieved, and the extent to which the continuance would inconvenience the trial court and the opposing party. *See Armant v. Marquez*, 772 F.2d 552, 556-57 (9th Cir. 1985); *see also Kloehn*, 620 F.3d at 1127 (listing these factors). Moreover, to succeed on a due process claim arising out of a denial of a continuance, the petitioner must, at a minimum, show some prejudice resulting from the court's denial. *Armant*, 772 F.2d at 556-57; *see also Kloehn*, 620 F.3d at 1127.

Here, the state court's analysis was objectively reasonable under both the facts of this case and clearly established federal law. "[T]rial courts 'necessarily require a great deal of latitude in scheduling trials' and are therefore accorded broad discretion on matters of continuances." *Bradley v. Henry*, 510 F.3d 1093, 1103 (9th Cir. 2007) (quoting *Morris*, 461 U.S. at 11). Accordingly, a trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (citations omitted); *see also United States v. Walters*, 309 F.3d 589, 592 (9th Cir. 2002) ("'A criminal defendant's exercise of this right [of counsel of choice] cannot unduly hinder the fair, efficient and orderly administration of justice.'" (citation omitted)).

In light of the circumstances of Harrell's case and the delay with which he sought self-representation, the state court's conclusion that the denial of the requested continuance did not

violate Harrell's federal constitutional rights was consistent with clearly established federal law. As the record shows that the trial court's decision was reasoned, rather than arbitrary, this decision satisfied both the Sixth Amendment and the Due Process Clause. *See Morris*, 461 U.S. at 11-12; *see also Houston*, 533 F.3d at 1079 (holding that the state court did not unreasonably apply federal law in upholding the denial of a defendant's request for a continuance when the trial court, *inter alia*, "evaluated [the defendant]'s diligence in timely retaining private counsel, and weighed the potential impact a continuance may have had on the victims and witnesses"). Accordingly, Harrell is not entitled to relief on this ground.

B.     *Denial of Right to Collateral Review* (Ground 2)

Harrell next contends that his "due process rights to collateral review" were violated by his inability to obtain his legal files from his former trial counsel. In support of his claim, Harrell contends that he requested a complete copy of his case file from both trial and appellate counsel, and he submitted two requests to the San Joaquin County District Attorney pursuant to the California Public Records Act. Although both his trial and appellate counsel responded that they had returned all items to Harrell, he nonetheless alleges that he has not received a response to any request and urges this Court to find a *Brady*[6] violation. Harrell also contends that he does not have a copy of the audio recording of the 911 call.

To the extent Harrell argues that his state habeas proceeding was unfair because he was unable to obtain documents or assistance from counsel, such claim is not cognizable on federal habeas review because it pertains only to matters that occurred in the post-conviction review

---

[6]     *Brady v. Maryland*, 373 U.S. 83 (1962), and its progeny require the prosecution to disclose material information that is "favorable to the accused, either because it is exculpatory, or because it is impeaching." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

process.  *See Cooper v. Neven*, 641 F.3d 322, 332 (9th Cir. 2011); *Franzen v. Brinkman*, 877

F.2d 26, 26 (9th Cir. 1989) (per curiam) ("[A] petition alleging errors in the state post-conviction

review process is not addressable through habeas corpus proceedings.").  Moreover, counsel and

the prosecution's alleged failure to provide Harrell with his files presents only an alleged

violation of state law requirements (Cal. Rules of Prof. Conduct, Rule 3-700(D)(1) and Cal.

Government Code § 6250 et seq.) that likewise are not grounds for federal habeas relief.

Similarly, *Brady* is not applicable because no such government suppression occurred with

respect to counsel, and Harrell fails to show that the prosecution's file contained exculpatory

material.  *See, e.g.*, *Jackson v. Browne*, 513 F.3d 1057, 1079 (9th Cir. 2008) (court-appointed

defense counsel is not a state actor for the purposes of the Fourteenth Amendment); *United*

*States v. Bagley*, 473 U.S. 667, 678 (1985) ("a constitutional error occurs, and the conviction

must be reversed, only if the evidence is material in the sense that its suppression undermines

confidence in the outcome of the trial").  Nor is he entitled to relief on his complaint that he has

only a transcript of the 911 recording and not the audio file.  Harrell fails to show that he had a

federal constitutional right to the audio file under *Brady* or any other authority, and he fails to

specify how the audio recording would be different from the transcript that he acknowledges is

in his possession.  Harrell therefore does not prevail on any argument advanced in support of this

ground.

C.      *Ineffective Assistance of Counsel* (Ground 3)

        Harrell additionally alleges that his trial counsel was ineffective for a variety of reasons.

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant

must show both that his counsel's performance was deficient and that the deficient performance

prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard.[7] *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Harrell must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,*

---

[7]     *See Brecht v. Abrahamson*, 507 U.S. 619, 639 (1993) (instructing that, where the standard applies, habeas relief is not warranted unless the error "had [a] substantial and injurious effect or influence in determining the jury's verdict").

474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

Harrell first faults trial counsel for failing to present the testimony of numerous witnesses who he claims would have presented evidence of Harrell's good character. The record suggests, however, that counsel made a strategic decision not to present character witnesses because, had he done so, the prosecutor would have been able to ask those witnesses about damaging evidence against Harrell, including his 14 prior convictions for theft-related crimes. Moreover, Harrell's exhibits in support of his claim indicate that counsel interviewed at least 3 of the potential witnesses and had obtained lukewarm reviews from at least some of them. Under these facts, it was entirely reasonable for counsel to focus the defense on the allegedly-questionable identification of Harrell as well as the unreliability of Martin's testimony. *See Strickland*, 466 U.S. at 689-90 (reasonable tactical decision by counsel with which the defendant disagrees cannot form the basis of an ineffective assistance of counsel claim).

Harrell next argues that trial counsel failed to adequately investigate the 911 call. But he provides no reason to believe that further investigation would have challenged the authenticity of the call, particularly given that the authenticity of the call is corroborated by the responding officer's report and the official police transcript. For the same reasons, Harrell fails to show that he was prejudiced by counsel's failure to investigate the call further.

Harrell additionally contends that trial counsel should have impeached Martin's mental competence by obtaining pretrial discovery of a report from the psychologist who found Martin

incompetent to stand trial.[8]  However, the record indicates that counsel received a copy of the report.  After Martin testified, counsel argued during closing argument that she lacked credibility because her admitted mental health issues rendered her unable to recall what actually happened.  Given that counsel had obtained the psychologist's report, he does not clearly articulate what more counsel should have done.  To the extent he contends that counsel should have called a mental health expert, based on this record, it appears that defense counsel found a mental health expert unnecessary because Martin readily admitted that she could not recall the robbery during her psychological examination, and counsel used that testimony to attack her trial testimony.  Likewise, Martin fails to show prejudice or that Martin's testimony could have been further undercut if counsel had acted differently.

Harrell also argues that counsel should have impeached Detective Perez with the videotaped interview to discredit Perez's testimony that, during that interview, Harrell admitted driving his car to the garage sale at Vo's home.  But the record shows that counsel had the videotape and unsuccessfully moved to exclude it, which indicates that counsel was aware of its contents and apparently believed that its admission would undermine the defense of mistaken identity.  The record thus supports that counsel reasonably chose to minimize the significance of the statement by suggesting that Perez's recollection was mistaken, noting during cross-examination that Perez had purposely destroyed his written notes of the interview and had failed to bring the videotape of the interview to court.

---

[8]    Although unclear from the record in this case, apparently Martin was subsequently adjudicated competent to stand trial because she reached a plea agreement with the prosecution prior to Harrell's trial and testified for the prosecution in Harrell's case.

Harrell further alleges that counsel should have obtained pretrial discovery of "several photographs taken of Petitioner and [Martin] on the day of their arrest." But the record shows that counsel examined the photographs prior to trial and stated on the record that he anticipated no objection to their admission so long as the prosecution provided an adequate foundation. Harrell fails to explain what counsel should have done differently or how that would have impacted his case. *See Jones v. Gomez*, 66 F.3d 199, 204–05 (9th Cir.1995) (conclusory allegations unsupported by a statement of specific facts do not warrant habeas relief).

Finally, Harrell avers that counsel was ineffective for failing to have a nightstand, which Martin supposedly purchased at the victim's garage sale, tested for the victim's fingerprints. According to Harrell, the nightstand was Asian-styled and counsel should have tested it because "the victim was Asian also." Harrell contends that the victim's fingerprints would have been found on the nightstand, which would have confirmed that no robbery happened. But such argument is far too speculative to demonstrate that fingerprint testing was warranted, and wholly insufficient to establish entitlement to habeas relief. *See Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (granting habeas relief "on the basis of little more than speculation with slight support" is improper); *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001) (unsupported, conclusory allegations are not enough to warrant an evidentiary hearing). Harrell is therefore not entitled to relief on any contention advanced in support of this ground.

D.    *Prosecutorial Misconduct* (Ground 4)

Finally, Harrell argues that the prosecutor committed misconduct by impermissibly vouching for prosecution witness Martin by asking her to confirm that, according to the terms of her plea bargain for the robbery, "in turn for that plea and for your truthful testimony in this

matter, . . . [the prosecution] would recommend a sentence to the Court of a felony local 365 days in county jail . . . ."

As an initial matter, Respondent correctly argues Harrell failed to fully exhaust this claim. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). To be deemed exhausted, a claim must have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To have properly exhausted his state court remedies, Harrell must have presented both the legal arguments and the factual basis to the highest state court. *See Peterson v. Lampert*, 319 F.3d 1153, 1155-56 (9th Cir. 2003). Although Harrell raised his prosecutorial misconduct/vouching claim on direct appeal to the Court of Appeal, he did not raise it in his petition for review in the Supreme Court. Consequently, the claim is not exhausted.

Moreover, even if Harrell had fully exhausted it, he would not be entitled to relief on it. "Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony." *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993); *see also Lawn v. United States*, 355 U.S. 339, 359 n.15 (1958); *Berger v. United States*, 295 U.S. 78, 86-88 (1935). Such misconduct poses two dangers: it may lead the jury to convict on the basis of evidence not presented, and it carries with it the imprimatur of the government. *United States v. Young*, 470 U.S. 1, 18-19 (1985).

The Ninth Circuit Court of Appeals has concluded that under certain circumstances "[e]liciting testimony on direct examination that a witness entered into a plea agreement that

requires truthful testimony may constitute vouching." *United States v. Dorsey*, 677 F.3d 944, 953 (9th Cir. 2012) (citing *United States v. Wallace*, 848 F.2d 1464, 1474 (9th Cir. 1988)). This is because "[t]hat a plea agreement requires a witness to tell the truth might be argued to suggest" that a witness, "who might otherwise seem unreliable, has been compelled by the prosecutor's threats and the government's promises to reveal the bare truth" and that "the prosecutor can verify the witness's testimony and thereby enforce the truthfulness condition of its plea agreement." *Id.* However, in another case the Ninth Circuit concluded that eliciting testimony on direct examination about a plea agreement entered into by the witness in exchange for truthful testimony does not constitute vouching. *See United States v. Necoechea*, 986 F.2d 1273, 1278 (9th Cir. 1993) ("Necoechea next argues that the prosecutor improperly vouched by eliciting testimony regarding the truthfulness provision on direct examination by asking Gibson if it were part of her agreement that she 'testif[y] truthfully and cooperat[e],' to which she responded yes. This is not vouching. The prosecutor's question does not imply a guaranty of Gibson's truthfulness, refer to extra-record facts, or reflect a personal opinion.")).

In the instant case, although the prosecutor elicited the fact of Martin's cooperation agreement with the government, the prosecutor did not refer to facts outside the record or imply that he could verify that Martin was telling the truth, or express his personal opinion of the truthfulness of Martin's testimony. As the Court of Appeal reasonably concluded in finding no vouching, "[t]he prosecution merely elicited information that would have come in during cross examination." *Harrell*, 2013 WL 647391, at *3.

Nor is Harrell entitled to relief on his corresponding claim that counsel was ineffective for failing to object to the alleged vouching. Because the statements did not constitute vouching,

could not be deemed ineffective for failing to object to the permissible statements. *See Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012) ("Counsel is not necessarily ineffective for failing to raise even a nonfrivolous claim, so clearly we cannot hold counsel ineffective for failing to raise a claim that is meritless." (internal citation omitted)). Moreover, as the Court of Appeal alternately concluded, "defense counsel may not have objected because he wanted to use the plea agreement in closing argument." *Harrell*, 2013 WL 647391, at *3. Such conclusion was reasonable and fully supported by the record, and Harrell is not entitled to relief on his ineffective assistance claim either. *See Strickland*, 466 U.S. at 689-90 (reasonable tactical decision by counsel with which the defendant disagrees cannot form the basis of an ineffective assistance of counsel claim).

E.      *Other Requests*

Harrell further seeks an order allowing him to conduct discovery in this case, an evidentiary hearing, and the appointment of counsel.

Rule 6 of the Rules Governing Section 2254 Cases ("Rule 6") governs discovery in this matter. Rule 6 provides:

> (a) Leave of court required. A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery. If necessary for effective discovery, the judge must appoint an attorney for a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A.

> (b) Requesting discovery. A party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents.

"[A] district court abuse[s] its discretion in not ordering Rule 6(a) discovery when discovery [i]s 'essential' for the habeas petitioner to 'develop fully' his underlying claim." *Dung The Pham v. Terhune*, 400 F.3d 740, 743 (9th Cir. 2005) (quoting *Jones v. Wood*, 114 F.3d 1002,

1009 (9th Cir. 1997)). However, courts should not allow a petitioner to "use federal discovery for fishing expeditions to investigate mere speculation." *Calderon v. United States Dist. Ct. for the N. Dist. of Cal.* (*Nicolaus*), 98 F.3d 1102, 1106 (9th Cir. 1996); *see also Rich v. Calderon*, 187 F.3d 1064, 1067 (9th Cir. 1999) (habeas corpus is not a fishing expedition for petitioners to "explore their case in search of its existence") (quoting *Aubut v. Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

The good cause requirement of Rule 6 is satisfied where "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-09. The good cause standard set forth by Rule 6 is similar to the standard that governs whether or not a habeas petitioner is entitled to an evidentiary hearing: "in deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *See, e.g.*, *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (discussing evidentiary hearing standard); *see also Jones v. Wood*, 114 F.3d 1002, 1008-09 (9th Cir. 1997) (where petitioner satisfied the standard for obtaining an evidentiary hearing on certain claims, district court abused its discretion by denying discovery request pertaining to such claims). Once a petitioner has demonstrated good cause to conduct discovery, the discovery provisions contained in the Federal Rules of Civil Procedure apply. Rule 6 of the Rules Governing Section 2254 Cases; *Bracy*, 520 U.S. at 904.

Section 2254(e)(2) of AEDPA bars most evidentiary hearings if the applicant "failed" to develop the factual basis for the claim in state court. In this context, "failed" "connotes some

19

omission, fault, or negligence on the part of the person who has failed to do something."

*Williams*, 529 U.S. at 431-32. "Under § 2254(e)(2), a petitioner who failed to develop the facts

of the claim in state court may not obtain a hearing in federal court except in limited

circumstances." *See, e.g.*, *Atwood v. Schriro*, 489 F. Supp. 2d 982, 1007 (D. Ariz. 2007). If the

court determines that the applicant failed to develop the factual basis for a claim in state court,

the district court can hold an evidentiary hearing only if the petitioner meets two demanding

requirements: (1) the allegations, if proven, would entitle the petitioner to relief; and (2) the state

court trier of fact has not reliably found the relevant facts. *Rich*, 187 F.3d at 1068. A habeas

petitioner who has failed to develop a factual basis for his claims in state court and requests an

evidentiary hearing before a federal district court must demonstrate that "the claim relies on . . . a

factual predicate that could not have been previously discovered through the exercise of

diligence and . . . the facts underlying the claim would . . . establish by clear and convincing

evidence that but for constitutional error, no reasonable factfinder would have found the

applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2).

 Harrell fails to demonstrate good cause here and is not entitled to discovery or an

evidentiary hearing in this matter. As discussed above, federal habeas claims are analyzed under

the framework of the AEDPA, 28 U.S.C. § 2254. In *Cullen v. Pinholster*, 563 U.S. 170, 181-82

(2011), the Supreme Court held that "review under § 2254(d)(1) is limited to the record that was

before the state court that adjudicated the claim on the merits." This effectively precludes

federal evidentiary hearings for such claims because the evidence adduced during habeas

proceedings in federal court could not be considered in evaluating whether the claim meets the

requirements of § 2254(d). *See id.* at 187 n.11 ("[Petitioner] has failed to show that the [state

court] unreasonably applied clearly established federal law on the record before that court, which brings our analysis to an end.") (internal citations omitted).  In *Runningeagle v. Ryan*, 686 F.3d 758, 773-74 (9th Cir. 2012), the Ninth Circuit explained that *Pinholster* governs discovery, expansion of the record and evidentiary hearings.  Thus, *Pinholster* bars a habeas court from any further factual development unless the court first determines that the state court made an unreasonable application of federal law or made an unreasonable determination of facts based on the record before it.  *Pinholster*, 563 U.S. at 202 n.20.  As discussed throughout this opinion, Harrell has failed to make a threshold showing that the state court made an unreasonable application of federal law or made an unreasonable determination of facts based on the record before it.

Nor can Harrell show that he is entitled to the appointment of counsel.  While this Court is not unmindful of the plight of unrepresented state prisoners in federal habeas proceedings, there is no constitutional right to counsel in federal habeas proceedings.  *See Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007) (citing *Coleman v. Thompson*, 501 U.S. 722, 756-57 (1991)).  Appointment of counsel is not required in a habeas corpus proceeding in the absence of an order granting discovery or an evidentiary hearing.  *See* Rules Governing Section 2254 Cases in the U.S. District Courts, Rule 6(a), 8(c).  This Court may under the Criminal Justice Act appoint counsel in this case if it determines that the interests of justice so require.  28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B); *see Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983) ("In deciding whether to appoint counsel in a habeas proceeding, the district court must evaluate the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved.").  Because this case has

been fully briefed, and the Court has now considered and adjudicated it on the merits and determined that no Certificate of Appealability should be granted, this Court does not so determine. Harrell's request for counsel must therefore also be denied.

## V. CONCLUSION AND ORDER

Harrell is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** Harrell's requests to conduct discovery in this case and for an evidentiary hearing and the appointment of counsel are **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: March 2, 2018.

       /s/James K. Singleton, Jr.
       JAMES K. SINGLETON, JR.
       Senior United States District Judge